524 F.2d 756
 77 Lab.Cas. P 11,129
 NF&M CORPORATION, a corporation, Appellant,
v.
UNITED STEELWORKERS OF AMERICA, an unincorporated
association, and United Steelworkers of America,
Local Union No. 8148, an unincorporated
association.
 No. 75-1424.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 18, 1975.
Decided Oct. 24, 1975.
 
 Thomas E. Lippard, Cohen, Cohen & Lippard, Pittsburgh, Pa., for appellant.
 Susan H. Bitensky, A. E. Lawson, Pittsburgh, Pa., for appellees.
 Before SEITZ, Chief Judge, and ROSENN and GARTH, Circuit Judges.
 OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 This challenge to an arbitrator's award invokes the very limited review function of courts in the area of arbitration. The NF&M Corporation ("the Company") appeals from a grant of summary judgment by the United States District Court for the Western District of Pennsylvania in favor of the United Steelworkers of America ("the Union") and Local 8148 ("the Local"), in an action brought by NF&M to set aside and vacate certain portions of an arbitrator's award. The Company contends that the arbitrator exceeded his authority under the labor agreement between it and the Union since there was no evidence before him upon which he could have based his determination that a discharge grievance had been timely processed.[1] We hold that the arbitrator did not exceed his authority and affirm.
 
 
 2
 The events which led to arbitration are as follows. The Company suspended indefinitely an employee, Mathew Catanese, on March 6, 1974, and orally discharged him for insubordination the following day after he appeared at the plant and lingered there despite orders to leave. The Company sent letters regarding the suspension and the discharge to the Local's President and its Grievanceman a few hours later. They immediately requested a meeting with the Vice-President for Manufacturing, Samuel Prisuta, to discuss the suspension and the discharge. At the meeting on March 8, called for the purpose of considering both grievances, Prisuta asked that discussion of the discharge be deferred so that the grievances could be taken in chronological order. Accordingly, when the meeting ended, the suspension grievance was not resolved and the discharge grievance had not even been discussed.
 
 
 3
 The Local's Grievanceman immediately filed a second step written grievance which read: "Mathew Catanese was suspended unjustly according to Article VII." The grievance is ambiguous on its face as Article VII refers only to discharges whereas the essence of the grievance is the suspension. The Grievanceman testified before the arbitrator that the grievance was intended to relate solely to Catanese's suspension and that, to his knowledge, no written grievance regarding the discharge had ever been filed.
 
 
 4
 The Company denied the written grievance on March 12 by endorsement on the reverse side. The Union asserts that Catanese was only then sent written notice of his discharge (a copy of the letter given to the Local's officers). Catanese thereupon contacted the Union representative, Dwayne Cooper.
 
 
 5
 Cooper wrote Samuel Prisuta on March 19, requesting a meeting on "Grievance No. 4-74 Discharge M. Catanese." The meeting took place on March 22, although the Company claims Prisuta first cautioned Cooper that the discharge issue was foreclosed under Article VI of the labor agreement. As the meeting was inconclusive, the Company by letter dated March 26 reiterated its position on the suspension grievance and stated that, since the discharge grievance had never been reduced to writing, its resolution against the Union was automatic under the contract.
 
 
 6
 Ultimately, the suspension grievance was referred to the arbitrator. The Company agreed to submit the issue of the timeliness of the discharge grievance and, if the arbitrator decided that the grievance was timely, to submit the merits as well. The arbitrator's award declared "(t)he grievance is timely" and ordered the reinstatement of Catanese with full seniority and back pay. Apparently, the arbitrator found that the grievance was timely because "the confusion and lack of clarity here (in the processing of the grievance) should not bar a hearing on the merits."
 
 
 7
 The district court was asked to set aside and vacate the portions of the award dealing with the discharge on the grounds that the express language of Article VI, paragraph 2 had not been complied with and that, therefore, the arbitrator could not have found the grievance timely without disregarding the labor agreement.
 
 
 8
 Although the scope of judicial review of an arbitrator's award is severely limited, a court must ascertain whether the award "draws its essence from the collective bargaining agreement." United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); Local 103 of the International Union of Electrical, Radio and Machine Workers, AFL-CIO v. RCA Corp., 516 F.2d 1336 (3d Cir. 1975). This Circuit has elaborated upon that language:
 
 
 9
 (A) labor arbitrator's award does "draw its essence from the collective bargaining agreement" if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award.
 
 
 10
 Ludwig Honold Manufacturing Co. v. Fletcher, 405 F.2d 1123, 1128 (3d Cir. 1969).
 
 
 11
 The district court in its memorandum opinion applied the Enterprise-Honold standard and concluded that the award should be upheld. We agree, and, as the district court did not explain its analysis, we find it necessary to state our reasons for this affirmance.
 
 
 12
 If the arbitrator's award has deviated from the plain meaning of a labor contract provision, it must find support in the contract itself or in prior practices demonstrating relaxation of the literal language. H. K. Porter Co., Inc. v. United Saw, File and Steel Products Workers of America, 333 F.2d 596 (3d Cir. 1964). An arbitrator may find compliance with the express terms of the grievance procedure in a labor contract excused by the parties' practical construction of it or "in light of the practice of the shop." Yellow Cab Co. v. Democratic Union Organizing Committee, Local 777, 398 F.2d 735, 737 (7th Cir. 1968), cert. denied, 393 U.S. 1015, 89 S.Ct. 619, 21 L.Ed.2d 561 (1969).
 
 
 13
 In this instance, the arbitrator did not make an explicit finding that compliance with the grievance procedures was excused. Rather, his opinion states that the time bar can be reasonably construed to be inapplicable, and his award simply holds that the grievance was timely.
 
 
 14
 An arbitrator is not required to list his reasons for the award, nor should an ambiguity in his opinion be seized upon to support an inference that he exceeded his authority. Enterprise, supra. Further, a court is precluded from overturning an award for errors in assessing the credibility of witnesses, in the weight accorded their testimony, or in the determination of factual issues. Amalgamated Butchers, Local 641 v. Capitol Packing Co., 413 F.2d 668 (10th Cir. 1969); Dallas Typographical Union, No. 173 v. A. H. Belo Corp., 372 F.2d 577 (5th Cir. 1967); International Brotherhood of Pulp, Sulphite and Paper Mill Wokers, Local 874 v. St. Regis Paper Co., 362 F.2d 711 (5th Cir. 1966).
 
 
 15
 Nonetheless, if an examination of the record before the arbitrator reveals no support whatever for his determinations, his award must be vacated. Electronics Corp. v. International Union of Electrical, Radio and Machine Workers, Local 272, 492 F.2d 1255 (1st Cir. 1974); H. K. Porter, Co., supra. If the arbitrator here had no evidence before him to support a determination either of compliance with the contractual grievance procedures or of excuse from compliance, his award on the timeliness issue would have no rational basis in the agreement and must be vacated.
 
 
 16
 We believe that there was evidence before the arbitrator from which he reasonably could conclude that the Union had substantially complied with the Article VI procedures. It is undisputed that the Union on March 7 requested the opportunity to meet with the Company to discuss both the suspension grievance and the discharge grievance. At the meeting arranged for this discussion the following day, the two grievances were raised, but the Company requested postponement of the discussion of the discharge in order to take the grievances in chronological order. Since the Local had raised the discharge grievance orally as provided in Article VI, first step, the obligation to proceed promptly under the contract shifted to the employer. The arbitrator reasonably might have found that the time limitation provisions of the grievance procedure were tolled by the Company's request to defer discussion of the discharge. In such event, Cooper's letter to Prisuta could have been construed as substantially in compliance with the second step of what are intended to be informal procedures in industrial relations. Whether or not we agree with the arbitrator's application and interpretation of the contract is irrelevant. It is his "construction which was bargained for and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960).
 
 
 17
 On the other hand, the arbitrator might have regarded the written grievance which was filed after the March 8th meeting as subsuming the discharge as well as the suspension. Despite testimony by the Grievanceman as to his intent to grieve only the suspension, the Union and Catanese, apparently intended to press both grievances. The Union's representative, Cooper, in his letter to Samuel Prisuta, referred to "Grievance No. 4-74," which is the written grievance filed on March 8, as a discharge grievance.
 
 
 18
 Finally, the arbitrator could have focused upon the date Catanese claimed to have received written notice of his discharge and measured the time limits from March 15, not March 7. The Union asserts that only on that date did it become fully aware that the Company intended to follow through with Catanese's dismissal. As March 15, 1974, was a Friday, Cooper's letter written on Tuesday, March 19, would fall within the three working days required by the contract for the filing of a written grievance, if Saturday or Sunday were not working days. An arbitrator's award which reasonably traced time limits from the last discussion between the Union and the Company rather than adhering to the literal contract language for measuring elapsed time has been upheld. See Yellow Cab, 398 F.2d at 737.
 
 
 19
 In summary, in view of the narrow scope of our review, we cannot say that the finding of the arbitrator that the grievance was timely filed is not derived in a rational way from the labor contract and other indicia of the parties' intentions.
 
 
 20
 The judgment of the district court will be affirmed.
 
 
 
 [1]
 Article VI, P 2 of the Labor Agreement (eff. date Nov. 1, 1973) provides in relevant part:
 First Step: All grievances shall be first raised orally by the grieving party within three (3) working days from the occurrence of the event about which the party is grieving. . . . The employer shall give its answer orally to the said grievance within three (3) working days from the day the grievance is first presented.
 Second Step: In the event no agreement is reached in the first step, the aggrieved party may within three (3) working days from the date of the conclusion of the first step reduce the said grievance to writing in duplicate . . . which . . . grievance must be presented to both a full time officer of the Union and the Employer or its authorized representative within the said three (3) day period. The Union and the Employer shall meet regarding the written grievance within fourteen (14) days of its reference to them, subject to mutual extension. An answer in writing shall be made in the second step within three (3) working days of the conclusion of the said meeting.
 Third Step: In the event no agreement is reached in the second step, either the Union or the Employer may, upon written notice to the other, appeal the grievance to arbitration within ten (10) working days from the date of the conclusion of the second step. . . .
 Article VI, P 3 provides in relevant part:
 (T)he failure of any party to comply with the time limitations imposed upon him under this Article VI shall result in the automatic settlement of the grievance in issue against the position of the party so failing to comply, which settlement shall be final and binding and not subject to further discussion or appeal.