UNITED STEELWORKERS OF
AMERICA, AFL–CIO, Plaintiff,

v.

LATROBE STEEL COMPANY,
Defendant.

Civ. A. No. 77–986.

United States District Court,
W. D. Pennsylvania.

June 1, 1978.

Frank J. Lucchino, Pittsburgh, Pa., for plaintiff.

Henry J. Wallace, Jr., Pittsburgh, Pa., for defendant.

OPINION

ROSENBERG, District Judge.

This action by the plaintiff, United Steelworkers of America, AFL–CIO, to enforce a labor arbitration award against the defendant Latrobe Steel Company, pursuant to 29 U.S.C. § 185, is presently before me on cross-motions for summary judgment. The defendant argues that this award is unenforceable as a matter of law, having been procured through misrepresentation and also is one which was not within the Arbitrator's stated jurisdiction.

On or about August 1, 1974, the plaintiff, United Steelworkers of America, and the defendant, Latrobe Steel Company, a subsidiary of the Timken Co., entered into a collective bargaining agreement, effective at all times material hereto, covering the terms and conditions of employment for the defendant's employees. Section VII(E)(5) of this collective bargaining agreement provides for the resolution of disputes between the plaintiff and the defendant through a grievance and arbitration procedure.[1] Part of the agreement also includes Supplemental Unemployment Benefits (SUB) under a company sponsored plan to provide income to employees who are wholly or partially unemployed.[2]

In November 1975, the United States Department of Labor informed the defendant that a certificate of eligibility had been issued to employees of the defendant company to apply for readjustment allowances under the Trade Act of 1974.[3] Upon receipt of notice that the employees were receiving these Trade Adjustment Allowances (TRA's), the defendant started to include such payments as income received under a "State System" program and to reduce proportionally the benefit to the employees from the SUB fund. The plaintiff protested this action and filed a grievance on June 10, 1976. Although the arbitrator by his decision of May 16, 1977, sustained the plaintiff's grievance, the defendant refused to comply with what it considers is an illegal award.

The narrow issue here is the extent to which this court may review an arbitrator's award rendered pursuant to a binding arbitration clause in a collective bargaining agreement. Although § 301 of the Labor-Management Relations Act of 1947, as amended 29 U.S.C. § 185, grants federal district court jurisdiction to order arbitration and to vacate or enforce arbitration awards, decisional law has consistently and strictly circumscribed the scope of this review.

*United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), states in general terms the governing principle involved.

> Company, insofar as shall be necessary to the determination of such grievances arising hereunder, but *the arbitrator shall not have jurisdiction or authority to add to, detract from, or alter in any way the provisions of this Agreement.* (Emphasis supplied)."

1. Section VII(E)(5) reads as follows:
   "The arbitrator's decision shall be final and binding on both parties and his compensation and the expense of the hearing shall be borne equally by both parties. Awards or settlements of grievances may or may not be retroactive but in no event may any award in a continuing grievance be retroactive to a date earlier than 30 days prior to the date on which the grievance was filed unless otherwise provided in this Agreement. *The arbitrator shall only have jurisdiction and authority to interpret, apply, or determine compliance with the provisions relating to wages, hours of work and other conditions of employment set forth in this Agreement together with those which are, or may hereafter, be in effect at the plant of the*

2. This plan provides that benefits payable under a "State System" such as state unemployment compensation, are to be deducted from the employee's SUB benefit (paragraph 1.3).

3. This provides for income to workers who are laid off or working only part time because of increased imports of foreign made articles. This supplements what an eligible worker receives as unemployment compensation.

"The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." (at page 596, 80 S.Ct. at page 1360).

Also,

"The question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." (at page 599, 80 S.Ct. at page 1362).

In *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, C.A. 3, 1969, the Court held:

"That a labor arbitrator's award does 'draw its essence from the collective bargaining agreement' if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award." (at page 1128)

■■ Therefore, the only role of a court in reviewing an arbitrator's interpretation of a collective bargaining agreement is to determine whether the award exceeds the limits of the arbitrator's contractual authority.[4] An arbitrator's jurisdiction is confined to the powers conferred upon him by the labor agreement and the scope of the issue or issues "marked out for his consideration" by the parties. *Enterprise, supra.*

■ If the arbitrator undertakes, in effect, to amend the contract and substitute his own discretion for that of the parties or dispense "his own brand of industrial justice", the enforcement of the award must be denied. *Enterprise, supra.* If an examination of the record before the arbitrator reveals no support whatever for his determination, his award must be vacated. *Electronics Corp. v. International Union of Electrical, Radio and Machine Workers, Local 272*, 492 F.2d 1255, C.A. 1, 1974.

■ It is in this vein, the defendant argues, that the arbitrator ignored the plain wording of the agreement and thus exceeded the jurisdiction conferred on him by § VII(E)(5). However, the plain wording of that agreement is ambiguous—and the issue before the arbitrator was one of contract interpretation.

Although the defendant argues that TRA's were automatically synonymous with state unemployment benefits and therefore properly deductible from the weekly benefits as a whole, the current SUB plan makes no specific reference to TRA's (despite the fact that federal law has long provided for payment of TRA's). And looking to the collective bargaining agreement as a whole, the arbitrator was confronted with the Settlement Agreement of July 19, 1974, setting forth the terms of the collective bargaining agreement of August 1, 1972. This states:

"The parties agree to incorporate the economic provisions of the United States Steel Corporation—United Steelworkers Settlement dated April 12, 1974, pertaining to improvements in wages, cost of living, vacation bonus, paid holiday, shift differential, *SUB*, Pension, hospitalization, and weekly Sick and Accidents benefits. The inclusion of these improvements are subject to the Agreement between the parties as outlined in the Attachments." (Emphasis added)

One of the attachments designated 12 specific topics in U. S. Steel Settlement Agreement which were not incorporated into the Agreement between the plaintiff

---

4. "At the very least, this means that the interpretations of labor arbitrators must not be disturbed so long as they are not in 'manifest disregard' of the law, and that 'whether the arbitrator misconstrued a contract' does not open the award to judicial review." *Ludwig v. Honold, supra,* at page 1128.

and the defendant, and SUB was not one of them. The defendant does not dispute that U. S. Steel SUB payments to employees are not reduced by virtue of TRA benefits. Therefore, the arbitrator could quite rationally conclude that the treatment of TRA's under the SUB plan by the U. S. Steel Corporation was an economic benefit which was adopted by the present parties under the terms of their settlement agreement. Certainly, it cannot be said that such a conclusion is not "drawn from the essence of a collective bargaining agreement".

In this regard, *Ludwig v. Honold, supra,* states:

"We do not agree, however, that the arbitrator is confined in this interpretation of one specific contractual provision while excluding the remainder of the contract and all other relevant considerations. Under well-established canons of interpretation and construction, effect must be given to all parts of the instrument." (at page 1130, fn. 31).

With this in mind, the arbitrator found that both parties had relied heavily on the treatment of the SUB plan by the principal negotiators of it, the plaintiff and U. S. Steel, in implementing their own. The reference by the arbitrator to two different letters of understanding between the U. S. Steel Corporation and the plaintiff dated December 31, 1969 and November 4, 1976, respectively, cannot be construed as an addition of provisions to a mutually unbargained for agreement.[5] In light of the Settlement Agreement of July 19, 1974, such

reference to U. S. Steel's interpretation of the agreement was necessary to ascertain the paramount consideration in the legal construction of all contracts, the intent of the parties. It cannot be said that the language of the collective bargaining agreement, taken as a whole, was so clear and complete as to obviate on its face any need for interpretation.[6]

In *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), one of the companion cases to *Enterprise, supra,* the Court explained that "the labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it." (at pages 581–582, 80 S.Ct. at page 1352)

■ The defendant also argues that the award is further unenforceable because it is based on a gross mistake of fact induced by the plaintiff's misrepresentation to the arbitrator that the defendant was "the 'single company' in the industry which has attempted to deduct TRA's from SUB benefits." A gross mistake of fact has been defined in *Electronics Corp. of America v. International Union of Electrical, Radio and Machine Workers, et al., supra,* as one "but for which, according to the arbitrator's rationale, a different result would have been reached." (at page 1257). It cannot be said from a reading of the arbitrator's decision, and particularly in light of the prior analy-

---

5. This was found to have occurred in *Local 342, United Automobile Aerospace & Agricultural Implement Workers of America (UAW), AFL–CIO v. T. R. W., Inc.,* 402 F.2d 727, C.A. 6, 1968. In this case, the arbitrator's award was denied enforcement because although the arbitrator had found that the discharged employees were in fact guilty of actually encouraging other employees to engage in an illegal strike (ground for discharge), he went on to conclude that "the arbitrator believes that a discharge can be improper because of procedural unfairness and it is his opinion that this is true in the present case." (at page 729).

6. The defendant cites *Timken Co. v. Local Union, No. 1123, United Steelworkers of America,*

482 F.2d 1012, C.A. 6, 1973, as having application to the case at bar. But in *Timkin* the arbitrator's award was denied because he ignored "uncontroverted testimony" as to a consistent policy of categorically denying unauthorized absences to employees confined to jail. Thus, the arbitrator clearly rejected one of the standard guides in interpreting a collective bargaining agreement, the law of the shop. In this regard, it should be noted that *Timkin* recognizes that "even though the arbitrator could have properly utilized sources outside the agreement for guidance and context, the dearth of such information in his opinion makes it difficult to contradict the unambiguous language of the agreement." (at page 1015, fn 2).

sis, that this alleged misrepresentation was the one "fact" upon which the arbitrator's award was based. Whether or not the defendant was "out of step" with all other steel companies is beside the point here, for the arbitrator to resolve the ambiguity presented was empowered under well established canons of contract construction, supra, to consider all relevant incidents bearing on the intent of the parties.

For these reasons I find that the arbitrator's award was soundly drawn from the essence of the agreement, and was rationally derived from it. Under all these circumstances there remains for resolution no factual disputes. Accordingly, the plaintiff's motion for summary judgment will be granted, and the defendant's motion for summary judgment will be denied.