TANOMA MINING COMPANY, INC., Plaintiff,

v.

LOCAL UNION NO. 1269, UNITED MINE WORKERS OF AMERICA, and District 2, United Mine Workers of America, Defendants.

Civ. A. No. 87–1300.

United States District Court, W.D. Pennsylvania.

July 12, 1989.

Thomas A. Smock, David J. Laurent, Polito and Smock, Pittsburgh, Pa., for plaintiff.

Michael H. Holland, Deborah Stern, Sherry Brashear, U.M.W.A. Gen. Counsel, Washington, D.C., Michael J. Healey, Pittsburgh, Pa., for defendants.

## OPINION AND ORDER

SIMMONS, District Judge.

Plaintiff, Tanoma Mining Company, Inc. ("Tanoma Mining"), initiated this action under Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. Section 185. Tanoma Mining seeks to have this court vacate the Arbitrator's May 14, 1987, labor arbitration award.

Defendants, Local Union No. 1269, United Mine Workers of America ("Local 1269"), and District 2, United Mine Workers of America ("District"), filed a counterclaim to enforce the award.

All parties have now filed motions for summary judgment.

On or about August 20, 1979, Tanoma Coal Company, N.V. ("Tanoma Coal") obtained property and mining rights to an area that is now known as the Tanoma Mine in Indiana County, Pennsylvania. See Complaint and Answer, paragraph 7. At the time of the acquisition, Tanoma Coal was a wholly owned subsidiary of Pohang Iron and Steel, Ltd. ("Pohang"), a Korean based steel corporation. See complaint and Answer, paragraph 7.

At or about this same time, Tanoma Coal and Barnes & Tucker Company ("B & T") entered into a management agreement whereby B & T agreed to construct, develop, and operate the Tanoma Mine. See Complaint and Answer, paragraph 7. The management agreement specifically provided that all personnel required for the development and operation of the Tanoma Mine would be employees of B & T. See Complaint and Answer, paragraph 7.

B & T, Local 1269, and District 2, eventually reached an agreement whereby B & T would give laid-off members of Local 1269 preferential hiring rights at the Tanoma Mine in exchange for their release of certain recall rights at other B & T operations. See Complaint and Answer, paragraph 10.

B & T's hourly employees at the Tanoma Mine became members of a newly formed local union of the UMWA, which is known as Local 2494, and were employed pursuant to terms and conditions of the collective bargaining agreements B & T executed with the UMWA on behalf of the employees at all of B & T's various owned or managed operations. See Complaint and Answer, paragraph 8.

B & T continued to operate the Tanoma Mine under the terms of the aforementioned agreements until January 1, 1987, when Tanoma Coal terminated B & T's management agreement. See Complaint and Answer, paragraph 11. In December, 1986, Tanoma Coal's successor, Tanoma Coal Company, Inc., formed a subsidiary, Tanoma Mining, which it subsequently hired to manage the Tanoma Mine. See Transcript p. 166.

In December, 1987, Tanoma Mining notified the UMWA that it would sign the National Bituminous Coal Wage Agreement of 1984, conditioned on an understanding that it was not bound by the special, preferential hiring agreement B & T had negotiated with Local 1269 and District 2. See Arbitrator's Opinion and Award, a copy of which is attached to the complaint as Exhibit "D", pps. 13–14.

The UMWA, however, objected to Tanoma Mining's position on this issue and, on January 21, 1987, employees of Local 1269 filed a grievance under the terms of the 1984 Agreement. The grievance stated as follows:

We claim management is in violation of Article I, Article I(a), Article XVII, Article XXV and Article XXVI of the NBCWA of 1984.

We claim Tanoma Mining Company is refusing to recognize Article XVII recall rights from the employer's panel as per the individual panel forms which they accepted at the time of the layoff and heretofore recognized.

We are asking [that] Tanoma Mining continue to adhere to Article XVII and recognize the Barnes & Tucker panel which was strengthened with a district agreement (an agreement to alleviate any questions of panel rights). Said agreement has been put into practice.

Position of the Mine Committee:

Tanoma Coal Company, Barnes & Tucker, L.U. 2494, and L.U. 1269 has for the past five yrs. recognized the Barnes & Tucker panel. We demand that Tanoma Mining Company recognize the panel, the agreement and past practice.

*See* Complaint and Answer, paragraph 15.

The parties were not able to resolve this grievance. Subsequently, by agreement, the matter was referred to arbitration pursuant to the terms of the 1984 Agreement and a hearing was held before the Arbitrator. *See* Complaint and Answer, paragraphs 16, 17.

In an Opinion and Award dated May 14, 1987, a copy of which is attached to the Complaint as Exhibit "D", the Arbitrator sustained the grievance. The Arbitrator reasoned that Tanoma Mining was bound by B & T's preferential hiring agreement with Local 1269 and District 2 since (1) B & T made the preferential hiring agreement as an authorized agent of Pohang, (2) Tanoma Mining was Pohang's new authorized agent, and (3) as the new authorized agent, Tanoma Mining was bound by B & T's agreements with Local 1269 and District 2.

On the other hand, Tanoma maintained that the Arbitrator's Award did not draw its essence from the collective bargaining agreement and should be vacated because (1) it was premised on an undisputed mistake of fact which has no support whatsoever in the record, (2) it was based upon a manifest disregard of agency law, and (3) it was based on the conduct of a third party who was not involved in the arbitration hearing, and accordingly, Tanoma Mining contends that summary judgment should be granted in its favor on the claim to vacate the Arbitrator's award and against defendants on their counterclaim to enforce the award.

In *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), the Supreme Court of the United States offered the following standard of review for arbitration awards:

> The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award

rests on errors of fact or on misinterpretation of the contract. "The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." [Citation omitted.] As long as the arbitrator's award "draws its essence from the collective bargaining agreement" and is not merely "his own brand of industrial justice," the award is legitimate. [Citation omitted.]

484 U.S. at 32, 108 S.Ct. at 370.

Despite this limited standard of review, courts have found that awards do not draw their essence from the collective bargaining agreement and should be vacated in a variety of situations.

For example, although it is well settled that an arbitrator's award cannot be vacated simply because he erred in making factual findings, courts have recognized that this rationale applies only to the resolution of ambiguous issues and does not apply where there are clear misstatements of undisputed fact. In *National Post Office Mailhandlers v. United States Postal Service*, 751 F.2d 834 (6th Cir.1985), the Court of Appeals for the Sixth Circuit stated as follows:

> *The District Court correctly noted that an arbitrator's reliance on a clear mistake of fact must be analyzed differently from an interpretation of application of the terms of the collective bargaining agreement.* Although it is sometimes said that arbitration awards cannot be upset "on the grounds of erroneous findings of fact," [citations ommitted], the reported cases demonstrate that this aphorism is properly applied to an arbitrator's factual determinations based on disputed or ambiguous evidence (i.e., his findings), rather than to clear misstatements of undisputed historical fact. [Citation omitted.]

Thus, the First Circuit has ruled that "when the 'fact' underlining an arbitrator's decision is concededly a non-fact

and where the parties cannot fairly be charged with the misapprehension, the award cannot stand. [Citations omitted.] *We agree with Judge Coffin's analysis that where the record that was before the arbitrator demonstrates an unambiguous and undisputed mistake of fact and the record demonstrates strong reliance on that mistake by the arbitrator in making his award, it can fairly be said that the arbitrator 'exceeded [his] powers or so imperfectly executed them' that vacation may be proper.* (Emphasis added.)

*See also Big Three Industries v. ILWU Local 142,* 124 L.R.R.M. 3173 (D.C.Hawaii 1987).

The Court of Appeals for the Third Circuit has endorsed this principle in the analogous setting of commercial arbitration:

Despite limited review of the merits, federal courts have permitted reversal where an arbitrator "manifest[s] an infidelity" to her obligation to interpret the contract, *United Steelworkers of America v. Enterprise Wheel & Car Corp.* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960), ignores a plain and unambiguous provision of the contract, *see NF & M Corp. v. United Steelworkers of America,* 524 F.2d 756, 759 (3d Cir.1975), or even strongly relies on an unambiguous and undisputed mistake of fact, *see National Post Office, Mailhandlers, Watchmen, Messengers and Group Leaders Div. v. United States Postal Service, 751 F.2d 834 (6th Cir. 1985); Electronics Corp. of America v. Electrical, Radio and Machine Workers,* 492 F.2d 1255, 1257–58 (1st Cir.1974).

*Apex Fountain Sales, Inc. v. Kleinfeld,* 818 F.2d 1089, 1094 (3d Cir.1987)

Likewise, an award does not draw its essence from the collective bargaining agreement and can be vacated if "an examination of the record before the arbitrator reveals no support whatsoever for his determinations." *NF & M Corporation v. United Steelworkers of America,* 524 F.2d 756, 760 (3d Cir.1975); *Detroit Coil Company v. International Association of Machinists & Aerospace Workers, Lodge # 82,* 594 F.2d 575 (6th Cir.1979); *United Steelworkers of America v. Latrobe Steel Company,* 452 F.Supp. 63 (W.D.Pa.1978).

In the instant case, the Arbitrator concluded that Tanoma Mining was required to honor B & T's preferential hiring agreement given Tanoma Mining's and B & T's "agency" relationships with Pohang. The Arbitrator reasoned as follows:

The history of the Mine began with a "News Release" from Barnes Tucker Company, dated December 12, 1979, which stated as follows:

Indiana, Pa. Anthony DiGiovanni, president and chief Executive Officer of Barnes & Tucker Company announced today that Barnes & Tucker Company, Barnesboro, Pa., in conjunction with Pohang Iron & Steel Company, Ltd., Republic of Korea, is planning to develop a large metallurgical coal mine near the community of Tanoma, eight miles northeast of Indiana, Pa....

*Tanoma Coal Company, N.V. is a wholly owned subsidiary of Pohang Iron and Steel, Ltd., a Korean Company. Tanoma Coal Company, N.V. obtained rights to mine the coal which is known as the Tanoma Mine. Tanoma Coal Company, N.V. contracted with Barnes & Tucker Company, as its agent, to develop, staff, and manage the Tanoma Mine....*

The grievants are members of a class of employees consisting of all former active employees of Barnes & Tucker Company who paneled to the Tanoma Mine. The Tanoma Mine was developed initially in a joint venture arrangement between Barnes & Tucker Company and a subsidiary of Pohang Iron and Steel Company, Ltd. (hereinafter sometimes referred to as "Pohang"). *The testimony suggested that the Tanoma Mine is owned by a subsidary of Pohang and is being operated as of January 1, 1987, by an authorized agent of Pohang, called the Tanoma Mining Company, Inc. The immediately preceding authorized agent was the Barnes & Tucker Company.* As such agent, Barnes & Tucker

Company made certain commitments to representatives of the grievants with respect to the possibility of being hired at the Tanoma Mine with their accumulated seniority with Barnes & Tucker Company Mines intact for certain benefits under the NBCWA of 1981, and subsequently the NBCWA of 1984. In return for those commitments, the bargaining agents for the grievants made return commitments to the authorized agents of Pohang. As of January 1, 1987, the current agent for Pohang has repudiated the commitments made by the immediately preceding authorized agent. The individual who now speaks for the current authorized agent, namely, the president of Tanoma Mining Company, Inc., was present at all of the prior negotiations at which the prior authorized agent entered into the commitments in favor of the class to which the grievants belong.

The above findings of fact disclose a case which is unique. The fact pattern of this case does not follow the pattern of the successorship cases previously decided under principles developed by the Arbitration Review Board. In the normal successorship cases, the purchaser and seller go their separate ways after the transaction is completed. In this case, the Barnes & Tucker Company declared, *in its own news release for the media,* that it was a joint venturer of sorts with Pohang. *Thereafter, as the authorized agent of Pohang, Barnes & Tucker Company had the full, open, actual and apparent authority to make the necessary arrangements and commitments to set up and operate the Tanoma Mine. As such authorized agent, Barnes & Tucker met with authorized agents for the UMWA,* including the International President, the District President and two Local Union Presidents. *Principles of agency, rather than successorship control in the instant case.*

*The specific employment arrangement made by the authorized agent of Pohang consisted of several related agreements: ... (4) an agreement by the authorized agent (Barnes & Tucker Company) of the principal (Pohang) to offer employment, in seniority order, to members of the Barnes & Tucker Company master panel, which offer could be turned down with no loss of accumulated seniority rights elsewhere.*

*It is my finding that since the totality of the aforesaid agreements was within the actual and apparent authority of the initial authorized agent (Barnes & Tucker Company) and since the union relied on the agreements to the detriment and benefit of its members, and since the substance of the agreements was to the benefit of the principal (Pohang) and since the obligations the agreements imposed on the principal were reasonably foreseeable obligations given the initial joint venture arrangement between Pohang and Barnes & Tucker Company, I hold that the current authorized agent (Tanoma Mining Company, Inc.) is bound by the terms of the totality of the aforesaid agreements, because the principal (Pohang) is bound by them.*

See Exhibit "D" to Complaint, pps. 10–11, 17–20.

Based on the foregoing, it is apparent that the Arbitrator premised his award on a finding that both Tanoma Mining and B & T were "authorized agents" of *Pohang.* This conclusion is clearly incorrect and lacks any evidentiary foundation in the record.

First, there was absolutely no evidence in the record which identified Pohang's relationship (if any) with B & T or otherwise indicated that Pohang authorized B & T to act on its behalf in any manner whatsoever. Indeed, the only evidence which remotely addressed this issue, *B & T's* press release, simply stated that B & T, "in conjunction with Pohang Iron & Steel Company, Ltd., Republic of Korea, is planning to develop a large Metallurical Coal Mine near the community of Tanoma...." *See* Exhibit D p. 10. Clearly, this brief reference to an unspecified future relationship could not reasonably support a finding of agency between Pohang and B & T.

Second, there is absolutely no evidence in the record as to Pohang's relationship with Tanoma Mining or otherwise indicating that Pohang authorized Tanoma Mining to act on its behalf in any manner whatsoever. The only evidence which remotely addressed this issue was that Tanoma Mining was a subsidiary of Tanoma Coal, which in turn, was an indirect subsidiary of Pohang. *See* Transcript, p. 166. Clearly, this reference to indirect, common ownership, alone, could not reasonably support a finding of agency between Tanoma and Pohang. *See* Transcript p. 166.

Defendants assert that the Arbitrator's award cannot be vacated simply because he may have erred in finding the facts. Defendants, however, fail to appreciate the nature of Tanoma Mining's claim.

Tanoma Mining admits that an award cannot be vacated because the arbitrator erred in finding the facts. Nevertheless, Tanoma Mining maintains that the Arbitrator did not simply err in finding the facts. Rather, he erred because (1) he relied upon an undisputed mistake of fact, and (2) there was absolutely no evidence in the record whatsoever to support his finding.

This distinction is significant since the courts, including the Third Circuit have specifically held that an award may be vacated in either of the latter two situations. *See Apex Fountain Sales, Inc. v. Kleinfeld*, 818 F.2d 1089, 1094 (3d Cir.1987); *National Post Office Mailhandlers v. United States Postal Service*, 751 F.2d 834, 843 (6th Cir.1985); *NF & M Corporation v. United Steelworkers of America*, 524 F.2d 756, 760 (3d Cir.1975); *Detroit Coil Company v. International Association of Machinists & Aerospace Workers, Lodge #82*, 594 F.2d 575 (6th Cir.1979); *Big Three Industries v. ILWU, Local 142*, 124 LRRM 3173 (D.C.Hawaii 1987); *United Steel Workers of America v. Latrobe Steel Company*, 452 F.Supp. 63 (W.D.Pa.1978).

Moreover, the record unequivocally establishes that the Arbitrator's award should be vacated on these grounds. The Arbitrator premised his award on a finding that Pohang Iron and Steel Company, Ltd. ("Pohang") acted as the principal in agency relationships with both Tanoma Mining and Barnes & Tucker Company ("B & T"). Although defendants assert that uncontradicted evidence of record supported these findings, a review of the evidence fails to substantiate any agency relationships whatsoever.

The only evidence defendants cite to support the Arbitrator's agency findings was (1) "that Barnes & Tucker and Tanoma Mining operated the Tanoma complex under the authority of management agreements with *Pohang's subsidiary* Tanoma Coal Company....," and (2) B & T's news release stated that B & T would develop a new mine *"in conjunction with Pohang"* (Defendants' Brief at 21–22.) (Emphasis added.) Obviously, this evidence does not remotely identify *any* conduct by *Pohang* which could justify a finding that it was a principal in an agency relationship with either B & T or Tanoma Mining.

Hence, since the Arbitrator's ultimate determination was premised on a conclusion that both B & T and Tanoma Mining were authorized agents of Pohang, and since these findings are (1) clear misstatements of fact, and (2) lack any foundation whatsoever in the record, the award does not draw its essence from the collective bargaining agreement and should be vacated.

Also, the Court of Appeals for the Third Circuit has recognized that a court can vacate an award if the arbitrator totally disregards applicable law. In *Local 863, International Brotherhood of Teamsters v. Jersey Coast Egg Producers, Inc.*, 773 F.2d 530, 533 (3d Cir.1985), the Court of Appeals stated as follows:

> An award may be set aside only in limited circumstances, for example, where the arbitrators's decision manifests disregard for the law rather than an erroneous interpretation of the law.

As a matter of undisputed agency law, B & T could have been Pohang's agent only if Pohang took some action to make B & T its agent. The Arbitrator however, completely disregarded agency law to find that B & T and Tanoma Mining were authorized agents of Pohang since, as noted above,

there was no evidence whatsoever indicating that Pohang took any such action.

Moreover, a finding of agency between Pohang and Tanoma Mining cannot rationally be premised on Tanoma Mining's relationship with Pohang's indirect subsidiary, Tanoma Coal. It is well settled that a parent/subsidiary relationship does not in and of itself establish an agency relationship between the parties. Section 14 M Restatement (Second) of Agency specifically states that "[a] corporation does not become an agent of another corporation merely because a majority of its voting shares is held by the other." This point was also made in *Japan Petroleum Company (Nigeria), Ltd. v. Ashland Oil, Inc.,* 456 F.Supp. 831 (D.Del.1978), where the court stated:

> Whether an agency relationship exists between a parent corporation and its subsidiary is normally a question of fact. The central factual issue is control, i.e. whether the parent corporation dominates the activities of the subsidiary.
>
> In order to determine whether or not a sufficient degree of control exists to establish an agency relationship, the court must look to a wide variety of factors, such as stock ownership, officers and directors, financing, responsibility for day-to-day operations, arrangements for payment of salaries and expenses, and origin of subsidiaries, business and assets.

456 F.Supp. at 840–841. *See also Zenith Radio Corporation v. Matsushita Electric Industrial Company, Ltd.,* 505 F.Supp. 1190 (E.D.Pa.1980). Hence, the mere fact that Tanoma Mining was an indirect subsidiary of Pohang cannot suffice to establish that Tanoma Mining was Pohang's agent for any purpose.

Accordingly, the Arbitrator's critical finding that there was agency relationship between Pohang and Tanoma Mining and Pohang and B & T, was premised on an absolute disregard of applicable, undisputed agency principles.

Furthermore, even if the Arbitrator could have found that B & T and Tanoma Mining were Pohang's agents, his conclu-sion that Tanoma Mining was bound by B & T's contractual obligations with Local 1269 and District 2 is at odds with fundamental agency law. While it is clear that both an agent and a principal may be bound by the agent's acts, there is absolutely no legal basis for concluding that a subsequent agent is bound by the prior agent's or the principal's obligations absent an express assumption of those obligations. This concept is evidenced by the following illustration: A hires B to represent him in lawsuit. B hires W as an expert witness. A subsequently fires B and hires C. In this situation, C clearly cannot be held liable for any of W's fees.

In this case, the Arbitrator reasoned that Tanoma Mining was bound by B & T's agreements with Local 1269 and District 2 erroneously finding they were both agents of Pohang. Even assuming that B & T was Pohang's agent, the Arbitrator's conclusion is at odds with fundamental agency law since there is no legal basis for imposing B & T's or Pohang's obligations on a new participant in the mining operation (Tanoma Mining) absent the express assumption of those obligations by the new participant. Hence, the Arbitrator's award should be vacated because he disregarded applicable, undisputed agency law.

Defendants have argued that an arbitration award cannot be vacated even if the Arbitrator disregards fundamental principles of law. Plaintiff Tanoma Mining has admitted that an arbitration award cannot be disturbed simply because the Arbitrator erroneously *interpreted* the law; however, the Court of Appeals for the Third Circuit has recognized that an award may be vacated if the Arbitrator obviously *disregards* applicable law. *Local 863, International Brotherhood of Teamsters v. Jersey Coast Egg Producers, Inc.,* 773 F.2d 530, 533 (3d Cir.1985).

The phrase "manifest disregard of the law", as used in the cases, is not limited to a disregard of the law in regard to the interpretation of the collective bargaining agreement. Rather, as implicitly recognized in *Jersey Coast,* (Supra) where the issue was the effect of a state court convic-

tion in a discharge case, the term can refer to general legal principles.

In this case, the issue is not whether the Arbitrator properly *applied* an agency finding under the collective bargaining agreement. Rather, the issue is whether he legitimately concluded, in the first instance, that there was in fact an agency relationship. Since this is solely a legal issue, it is obviously subject to "the manifest disregard of the law" standard of review.

In this case, the Arbitrator held, as a matter of law, that Tanoma Mining, was Pohang's agent, and was bound by Pohang's existing obligations even in the absence of any assumption by Tanoma of those obligations. Clearly, there is no legal basis whatsoever for such a conclusion.

This District Court also notes that the Arbitrator exceeded the scope of his authority to arbitrate by attempting to bind Pohang to B & T's agreement with the Union even though Pohang was not a party in the arbitration proceeding and did not participate in said proceeding.

Various courts have recognized that an entity which is not an express party to the collective bargaining agreement and is not present at the arbitration hearing cannot be bound by the Arbitrator's award. In *Orion Shipping and Trading Company v. Eastern States Petroleum Corporation of Panama*, 312 F.2d 299, 300–01 (2d Cir. 1963) the Court of Appeals for the Second Circuit noted as follows:

> Judge Dawson denied Orion's motion under Section 9 of the United States Arbitration Act, 9 U.C.S. Section 9, to confirm that portion of the arbitration award holding Signal liable as a guarantor of Orion's contractual obligations. He held, properly we think, that the Arbitrator exceeded his powers in determining the obligations of a corporation which was clearly not a party to the arbitration proceeding and that Signal's motion to vacate the award against it should be granted. [Citation omitted.] A decision whether parties other than those formally signatories to an arbitration clause may have their rights and obligations determined by an arbitrator when that issue has not been submitted to him is not within the province of the arbitrator himself but only of the court. *See also International Brotherhood of Electrical Workers v. O.K. Electric Company, Inc.*, 793 F.2d 214 (8th Cir.1986). *American Renaissance Lines, Inc. v. Saxis Steamship Company*, 502 F.2d 674 (2d Cir.1974).

In the instant case, the Arbitrator found that Tanoma Mining was bound by B & T's agreements with Local 1269 and District 2 ostensibly because Pohang, as the principal was in an agency relationship with B & T, and was bound by B & T's contractual arrangements. The Arbitrator stated in support of his award as follows:

> The prior authorized agent bound Pohang (the principal) to the 1984 NBCWA and, therefore, the new agent, (Tanoma Mining Company, Inc.) is bound to follow the 1984 NBCWA, *because the principal is bound to follow it.* (Emphasis added.)

See Exhibit "D" to Complaint, p. 22.

Nevertheless, there was no evidence of any kind whatsoever in the record to support the Arbitrator's implicit conclusion that Pohang was an express party to any agreement with the UMWA or that Pohang was notified of or participated in the arbitration hearing. Accordingly, since the Arbitrator cannot bind a non-party to his award, and since Pohang as a necessary party had no involvement in this case, the Arbitrator's award must be vacated.

For all of the foregoing reasons, this District Court holds that the Arbitrator's award does not draw its essence from the collective bargaining agreement and said award shall be vacated. Accordingly, summary judgment is granted for Plaintiff Tanoma Mining and against Defendant Local 1269 and Defendant District 2 on Tanoma Mining's claim as well as Local 1269's and District 2's counterclaim.

An appropriate Order shall be entered.

### ORDER

AND NOW, this 12th day of JULY, 1989, after consideration of the briefs and con-

tentions of the parties and for the reasons previously set forth in the accompanying Opinion;

IT IS ORDERED that the Arbitrator's award is hereby VACATED, and the Plaintiff's Motion for Summary Judgment be and the same is hereby GRANTED, and the Defendant's Motion for Summary Judgment be and the same is hereby DENIED.