**TANOMA MINING COMPANY, INC.**

v.

**LOCAL UNION NO. 1269, UNITED MINE WORKERS OF AMERICA and District 2, United Mine Workers of America, Appellants.**

No. 89–3542.

United States Court of Appeals, Third Circuit.

Argued Jan. 16, 1990.

Decided Feb. 13, 1990.

Claudia Davidson, Healey Whitehill, Pittsburgh, Pa., Robert H. Stropp, Jr., Gen. Counsel, Michael Dinnerstein (argued), United Mine Workers of America, Washington, D.C., for appellants.

Thomas A. Smock, David J. Laurent (argued), Polito & Smock, P.C., Pittsburgh, Pa., for appellee.

Before BECKER, GREENBERG and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

Appellant Local 1269 of the United Mine Workers of America (UMWA) and appellee Tanoma Mining Company (Tanoma Mining) submitted a labor dispute to an arbitrator under the terms of a collective bargaining agreement. After the arbitrator rendered a decision in favor of the UMWA, Tanoma Mining filed an action in district court, pursuant to section 301 of the Labor Management Relations Act, seeking to overturn the arbitrator's award. The district court vacated the award and the UMWA filed this timely appeal. Because we conclude that the district court impermissibly substituted its view of the facts and law for the arbitrator's view, we will reverse.

### I.

In August, 1979, Tanoma Coal Company, N.V. (Tanoma Coal) obtained the property and mining rights to the Tanoma Mine in Indiana County, Pennsylvania. Tanoma Coal was and is a wholly owned subsidiary of Pohang Iron & Steel, Ltd. (Pohang), a Korean corporation. Tanoma Coal hired Barnes & Tucker (B & T), a Pennsylvania corporation, to construct, develop and operate the Tanoma Mine. The plan to open the mine was announced through a press release dated December 12, 1979 which stated, in pertinent part:

> Anthony DiGiovanni, President and Chief Executive Officer of Barnes & Tucker Company announced today that Barnes & Tucker Company, Barnesboro, Pa., *in conjunction with Pohang Iron & Steel, Ltd., Republic of Korea,* is planning to develop a large metallurgical mine near the community of Tanoma, eight miles northeast of Indiana, Pa.

Joint App. p. 52 (emphasis supplied).

Pursuant to the management agreement between Tanoma Coal and B & T, B & T entered into an agreement with the UMWA which would give preferential hiring rights at the Tanoma Mine to UMWA members who were laid off from other B & T mines. In exchange, UMWA members hired at the Tanoma Mine would waive their right to be recalled to their mother mines. This agreement was negotiated by Richard Painter, who was Vice President of Operations at B & T at the time. B & T abided by the

hiring agreement for as long as it operated the Tanoma Mine.

In late 1986, Tanoma Coal formed a wholly owned subsidiary known as Tanoma Mining Company (Tanoma Mining).[1] Tanoma Coal terminated its management agreement with B & T on January 1, 1987 and entered into a new management agreement with Tanoma Mining. Richard Painter resigned as Vice President at B & T to become the President of Tanoma Mining.

In December of 1986, Tanoma Mining notified the UMWA that it was willing to sign the National Bituminous Coal Wage Agreement of 1984 (the same agreement that had governed the relationship between B & T and the UMWA) on the condition that Tanoma Mining not be bound by B & T's preferential hiring agreement with the UMWA. The UMWA, believing that Tanoma Mining was bound to honor the agreements reached by B & T and the UMWA, filed a grievance under the terms of the 1984 Agreement.[2] The parties agreed to submit the dispute to final and binding arbitration.

In an Opinion and Award dated May 14, 1987, the arbitrator directed Tanoma Mining to honor the preferential hiring agreement. In his opinion, the arbitrator first noted that he intended to apply agency principles in order to resolve the dispute. The arbitrator then determined that B & T had been Pohang's agent, and that Tanoma Mining was Pohang's new agent. Tanoma Mining was bound by the preferential hiring agreement since, according to the arbitrator's reasoning, Pohang was bound.

Tanoma Mining filed this action in district court pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, seeking to overturn the arbitrator's award. The district court vacated the arbitrator's award, holding that the arbitrator's finding that B & T was an agent of Pohang was a clear misstatement of fact, that the arbitrator disregarded well settled principles of agency law, and that the arbitrator exceeded his authority by binding Pohang, an entity not party to the arbitration. 717 F.Supp. 357. The UMWA filed this timely appeal.

## II.

We note at the outset the extremely limited role the courts play in reviewing an arbitrator's award. A district court is not free to vacate an award merely because it views the merits differently. *United Steelworkers of America v. Enterprise Wheel & Car*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). This high level of deference is compelled by the preference for private resolution of labor disputes expressed in the federal statutes governing labor-management relations. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987). Since the parties have bargained for the arbitrator's decision, "it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *Misco*, 108 S.Ct. at 370.

Despite this limited role in reviewing arbitration awards, an award may be vacated in some circumstances. A court may vacate an arbitrator's award if it does not draw its essence from the collective bargaining agreement, but instead repre-

---

**1.** At this same time, Tanoma Coal reincorporated in the United States as Tanoma Coal Company, Inc. We will continue to refer to this entity as Tanoma Coal.

**2.** The grievance stated:

We claim management is in violation of Article I, Article I(a), Article XVII, Article XXV and Article XXVI of the NBCWA of 1984.

We claim Tanoma Mining Company is refusing to recognize Article XVII recall rights from the employer's panel as per the individual panel forms which they accepted at the time of the layoff and heretofore recognized.

We are asking Tanoma Mining continue [sic] to adhere to Article XVII and recognize the Barnes & Tucker panel which was strengthened with a district agreement (an agreement to alleviate any questions of panel rights). Said agreement has been put into practice.

sents the arbitrator's "own brand of industrial justice." *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361. This exception is a narrow one. An arbitration award draws its essence from the bargaining agreement if "the interpretation can in *any rational way* be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties intention." *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir.1969) (emphasis added). *See also Roberts & Schaefer Co. v. Local 1846, United Mine Workers*, 812 F.2d 883, 885 (3d Cir.1987).

### III.

██ Despite this exceedingly narrow standard of review, the district court vacated the arbitrator's award after erroneously determining that the award was based on an undisputed mistake of historical fact. The district court relied on *National Post Office Mailhandlers, Watchmen, Messengers and Group Leaders Div. v. United States Postal Service*, 751 F.2d 834 (6th Cir.1985), in which the court vacated an award where the arbitrator relied on the erroneous finding that an employee had pled guilty to an offense before his employer terminated him. The date of the employee's termination and the date on which he pled guilty were clear from the record and not in dispute. The arbitrator bizarrely and incorrectly found that the criminal plea came first. In such circumstances, the court held that the arbitrator " 'exceeded [his] powers or so imperfectly executed them' that vacation" was proper. *Id.* at 843.

*National Post Office* is inapposite here. The relationships of B & T and Pohang, and Tanoma Mining and Pohang, were not undisputed historical facts, but rather were hotly contested issues. Tanoma Mining's position before the arbitrator was that it was not related to B & T and the "action on the part of the Barnes & Tucker Company clearly cannot now be found to be binding on the new operator of the Tanoma Mine."

In contrast, the Union asserted that the "evidence establishe[d] that Barnes & Tucker Company, as the authorized agent for Pohang," negotiated agreements which should now bind Tanoma Mining. The district court erred in characterizing the arbitrator's resolution of this issue as a mistake of undisputed historical fact.[3]

Tanoma Mining nonetheless argues that the district court was justified in vacating this arbitration award. Tanoma Mining correctly notes that "if an examination of the record before the arbitrator reveals no support whatever for his determinations, his award must be vacated." *NF & M Corp. v. United Steelworkers of America*, 524 F.2d 756, 760 (3d Cir.1975). Tanoma Mining contends that the arbitrator's finding that B & T was an agent of Pohang is without support in the record.

██ Although the support is slender, the record reveals some basis for the arbitrator's conclusion that an agency relationship existed between B & T and Pohang. The arbitrator placed particular emphasis on the press release of December 12, 1979, in which B & T and Pohang were characterized as joint venturers. Also, there was testimony at the arbitration hearing that Richard Painter was negotiating on behalf of "the Koreans," and that his salary and expenses were paid by "the Koreans." Finally, there was testimony that certain safety awards at the Tanoma Mine were only given out with the approval of "the Koreans." Our review of the arbitrator's factual findings is not whether those findings were supported by the weight of the evidence or even whether they were clearly erroneous. All that is required is some support in the record. *See NF & M Corp.*, 524 F.2d at 760. When the court finds some support, the inquiry is over. In this case, the arbitrator could have concluded from the testimony that "the Koreans" referred to Pohang and that B & T was acting as Pohang's agent in negotiating

---

**3.** Indeed, the only relevant undisputed facts were that Tanoma Coal was a wholly owned subsidiary of Pohang and that Tanoma Mining was a wholly owned subsidiary of Tanoma Coal, which facts favor the position of the UMWA—not Tanoma Mining.

with the UMWA.[4]

## IV.

■ As an alternative basis for its decision, the district court held that the arbitrator had completely disregarded principles of agency law in holding that Tanoma Mining was bound by the agreement between B & T and the UMWA. It is clear that an award may not be vacated merely because the arbitrator made an error of law, but only if "the arbitrator's decision evidences a manifest disregard for the law." *Local 863 Int'l Bhd. of Teamsters v. Jersey Coast Egg Producers*, 773 F.2d 530, 533 (3d Cir.1985), *cert. denied*, 475 U.S. 1085, 106 S.Ct. 1468, 89 L.Ed.2d 724 (1986). *See also Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953).

The arbitrator first determined, apparently solely as a matter of fact, that B & T was Pohang's agent, and that Tanoma Mining was currently Pohang's agent. The arbitrator then reasoned that

> since the totality of the ... agreements was within the actual and apparent authority of the initial authorized agent (Barnes & Tucker Company), and since the Union relied on the agreements to the detriment and benefit of its members, and since the ... agreements.... benefit[ed the] principal (Pohang) and since the obligations the agreements imposed on the principal were reasonably foreseeable obligations given the initial joint venture arrangement between Pohang and Barnes & Tucker Company ... the current authorized agent (Tanoma Mining Company, Inc.) is bound ... be-

cause the principal (Pohang) is bound by them.

Joint App. p. 62.

The arbitrator did not further expound on how agency law principles compelled his result.

The district court found the arbitrator's opinion "was premised on an absolute disregard of applicable, undisputed agency principles." 717 F.Supp. at 363. Specifically, the district court noted that an agency relationship may only be created by the actions of the principal, and, in the district court's opinion, Pohang had not taken any such actions. Furthermore, even if B & T had been Pohang's agent, and Tanoma Mining was Pohang's new agent, the district court determined that Pohang's new agent could not be bound, as a matter of agency law, by the commitments of its old agent. 717 F.Supp. at 326–363.

■ Whatever the merits of the version of agency law propounded by the arbitrator, we cannot agree that his award manifests a disregard for the law. Although the arbitrator's understanding of agency law was somewhat hazy, he was attempting to apply the legal principles as he understood them. *See Local Joint Exec. Bd. of Las Vegas v. Riverboat Casino Inc.*, 817 F.2d 524, 528 (9th Cir.1987) ("The fact that [the arbitrator] applied [legal principles] differently than we might have applied them does not constitute a manifest disregard of the law.") In this case, the district court impermissibly substituted its legal reasoning for the reasoning of the arbitrator.[5] Furthermore, it was entirely reasonable for the arbitrator to conclude that the UMWA should not lose the benefits of

---

**4.** We note additionally that it is undisputed that B & T was the agent of Pohang's wholly owned subsidiary, Tanoma Coal.

**5.** At oral argument, counsel for Tanoma Mining suggested that the arbitrator demonstrated manifest disregard for the law by even attempting to apply agency law to this dispute. The collective bargaining agreement in this case contained provisions relating to successorship law, but was silent as to whether agency principles were to apply. We cannot agree that the arbitrator's choice of legal principles constitutes grounds for vacating his award. "The labor arbitrator's source of law is not confined to the express

provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). Agency law has been applied in other labor arbitration contexts, *see* Elkouri & Elkouri, *How Arbitration Works* 392 (4th ed. 1985) (gathering arbitration decisions relying on agency principles), and the arbitrator could have properly determined that it applied in this case.

its agreement with B & T simply because Tanoma Coal, which had turned management of the mine over to B & T, substituted Tanoma Mining, its own subsidiary, for B & T as manager of the mine.

### V.

■ Finally, the district court determined that the arbitrator's award must be vacated in this case because the award attempted to bind an entity, Pohang, which was not a party to the arbitration. Although the arbitrator considered evidence of Pohang's relationship with the other entities involved in the dispute, the award does not by its terms attempt to bind Pohang. Only Tanoma Mining is bound by the award. The cases cited by Tanoma Mining in this regard are not on point, since they involve cases in which the arbitration award by its terms or the district court in its opinion attempted to bind a non-party.[6] Thus, the district court could not vacate the award on this ground.

### VI.

We find that the district court erred in holding that the arbitrator's award lacked any factual support, evidenced a manifest disregard for the law, and attempted to bind an entity not a party to the arbitration. Consequently, we will reverse the order of the district court and reinstate the arbitrator's award.

---

**6.** *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp.,* 312 F.2d 299, 300–01 (2d Cir.), *cert. denied,* 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (1963) (district court properly vacated arbitration award which attempted to make a non-party a guarantor of party's contractual obligation, district court should not pierce corporate veil to justify an award attempting to bind a non-party); *American Renaissance Lines, Inc. v. Saxis Steamship Co.,* 502 F.2d 674, 677 (2d Cir.1974) (district court erred in contradicting arbitrator's finding of corporate separateness and piercing corporate veil to hold that a non-party was present in the arbitration proceeding); *International Bhd. of Elec. Workers, Local 265 v. O.K. Elec. Co., Inc.,* 793 F.2d 214, 216 (8th Cir.1986) (district court properly refused union's request to enforce an arbitration award against a non-party).