

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-24-2008

# Transtech Ind Inc v. A&Z Septic Clean

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5246

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Transtech Ind Inc v. A&Z Septic Clean" (2008). *2008 Decisions*. Paper 1398.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1398

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 05-5246

TRANSTECH INDUSTRIES, INC., a Delaware Corporation;
KIN-BUC, INC., a New Jersey Corporation; FILCREST REALTY INC.,
a New Jersey Corporation

v.

A&Z SEPTIC CLEAN; AAA TANK; A. ALFANTE; ABM DISPOSAL SERVICE;
AM ENVIRONMENTAL; A.E. STANLEY MANUFACTURING COMPANY;
ABSOLUTE FIRE PROTECTION, INC.;ACCURATE FORMING;
ACTIVE OIL SERVICE; ADCHEM CORP.; ADRON INC.;
AERO NUTRONICS FORD; AETNA CHEMICAL CORPORATION;
AIR PRODUCTS & CHEMICALS, INC.; AKZO CHEMICALS, INC.;
ALCAN ALUMINUM CORPORATION; ALCOLAC INC.; ALL COUNTY SEPTIC;
ALL COUNTY SERVICE CORP.; ALLIED-SIGNAL INC.; ALPHA
METALS, INC.; AMER. BOOK STRATFORD; AMERADA HESS CORP.;
AMERICAN CYANAMID CO; AMERICAN PRODUCTS CO., INC.;
AMERICAN STANDARD, INC.; AMERICAN TRAILER;
ANCHOR MOTOR FREIGHT;
ANDY FIORE & SONS; ARCO PETROLEUM PRODUCTS; ASARCO INC.;
ASHLAND OIL INC.; ASSOCIATED MARBLE CO; ASTRO PAK CORPORATION;
AT&T TECHNOLOGIES, INC.; ATI, INC.; ATLAS PAINTS;
AUTOMATIC CONNECTOR, INC.; AVANTE PRODUCTS CORP; AXTON-CROSS
CO., INC.; B&L INDUSTRIAL SERVICE; BAD PALLET CO.; BARCLAY
CLEANING CO.; BARON BLAKESLEE; BAROUH EATON ALLEN CORP.; BASF
CORP.; BATES MANUF. CO.; BAXTER HEALTHCARE CORP.; BARONNE
BARR & DRUM; BEACON FAST FREIGHT CO., INC.; BECTON, DICKINSON
AND CO.; BENDIX CORP.; BENJAMIN MOORE & CO; BERGEN MACHINE
& TOOL; BERKELEY CHEM. CO.; BEST DISP. & DRUM SERV.; BEST DISPOSAL;
BEST FOODS RESEARCH CNTR.; BFT; BIDDLE SAWYER CORP;
BIG 3 TRUCK PLAZA; BIOCRAFT LAB. INC.; BOC GROUP INC.;
BORDEN, INC.; BORG-WARNER CHEMICALS, INC.;
BOROUGH OF WALLINGTON;
BOSTITCH INC.; BROOKDALE SHOP-RITE; BROWN STONE INN;
BROWNING-FERRIS IND. OF ELIZ. NJ; C&R TRUCKING, CO.;

CPS CHEMICAL CO.; CJR CHEMICAL CO.; CPC INTER'L INC.; CADBURY CO.; CAN MEG CO.; CARBOLINE CO.; CARPENTER TECH. CORP; CECOS INTERN'L, INC.; CENTRAL JERSEY ASSOC; CENTRAL JERSEY DISPOSAL; CESCO COMPANY; CHAS PETZER INC.; CHEM CLEANING SERV.; CHEM TROL POLLUTION; CHEMICAL CONTROL CO.; CHEMICAL LEAMAN TANK LINES, INC.; CHEMLINE CORP.; CHEMQUID DISPOSAL INC.; CHEESEBOROUGH PONDS; CHEVRON CHEMICAL CO.; CHEVRON U.S.A. INC.; CIBA-GEIGY CORP.; CITY SERV. OIL CO.; CLAIROL, INC.; CLARK HAULERS; CLEAN WATER, INC.; CLEVELAND WRECKING; COASTAL SERVICES INC; COASTAL TANK LINES; COCA-COLA FOODS; COLGATE-PALMOLIVE CO., INC.; COLONY FURNITURE CO.; COLUMBIA CORRUGATED; COLUMBIAN RIBBON; CON-LUX COATINGS INC; CONTINENTAL CAN CO.; CONTINENTAL CHEM CO.; CONTINENTAL OIL; COOPER INDUSTRIES, INC.; COVINO'S INDUSTRIAL DISP. SERV., INC.; CRANE & CO., INC.; CURTIS NUCLEAR; CURTISS-WRIGHT CORP; CUSTOM BUILDERS; CUSTOM DISPOSAL; D&C CONTRACTING; DART INDUSTRIES; DARWORTH CO.; DATA GENERAL CORP.; DELCO REMY; DELEET MERCHANDISING CORP.; DELMARVA IND CORP.; DIBELLA SANITATION; DOCK WATCH QUARRY; DONADIA BROTHERS; DONALD HARTMAN; THE DOW CHEMICAL CO.; DREW CHEM CORP.; DUANE MARINE CORP.; DUBOIS CHEMICALS INC; DURO-TEST CORP.; E.J. GAISSER INC; E.I. DUPONT DE NEMOURS AND CO., INC.; E.R. SQUIBB & SONS, INC.; EAST COAST POLLUTION CONTROL, INC.; EASTERN IND. CORP.; EASTERN INDUSTRIES; ECOLAB, INC.; EDAL INDUSTRIES, INC; EGYPTIAN LACQUER; ELIZABETH DISPOSAL; HATFIELD WIRE & CABLE; HAVEN CHEM.; HENKEL INC.; HERCULES, INC.; HEXCEL CORP.; HI-PURE CHEMICALS, INC.; HIGH VOLTAGE ENGIN CORP.; HIGHWAY DISPOSAL; HOECHST CELANESE CORP.; HOFFMANN-LA ROCHE INC; HOLIDAY INN REST.; HOWARD FUEL CO.; HOWMEDICA; HPH CONSTRUCTION; HYDROCARBON RESEARCH, INC.; IBM CORP.; ICI AMERICAS INC.; ICI UNITED STATES; ILFORD PHOTO CORP.; IMPERIAL OIL CO. INC.; IMPORTICO, INC.; IND SURPLUS CHEMICAL, INC.; INDUSTRIAL SILVER CO; INMONT CHEMICAL; INMONT CORP.; INSFLEX CO.; INSTEL CORP.; INTER'L FLAVORS AND FRAG. INC.; INTERDATA CORP.; INTERSTATE CHEM. CO.; IRON OXIDE CORP.; ITT CORP.; J BASS & CO. INC.; J. FILTRESTO SANIT.;

J.M. HUBER CORP.; J.T. BAKER, INC.; JAMECO CORP.; JAMECO INDUSTRIES; JAMES P. HORAN, INC.; JERSEY SANITATION; JOHN DUSENBERY CO., INC.; JOHN ERRICO DISPOSAL CO.; JOHN H. COONEY, INC.; JOHNSON & JOHNSON; JOHNSON MATTHEY, INC; KAY-FRIES, INC.; KERRY TIRE; KEUFFEL & ESSER CO; KEY OIL CO.; KNOLL FINE CHEMICAL; KOPPERS CO., INC.; KRAFT CONTAINER; KTK CORP.; L&J DRUM CO.; L.E. CARPENTER & CO.; LAWRENCE MCFADDEN CO; LAWSON PRODUCTS, INC; LEHAND SALES; LEHIGHTON ELEC. INC.; LEKSI, INC.; LELAND INDUSTRIES; LELAND TUBE CO.; LEVER BROTHERS CO.; LINCOLN METALS PRODUCTS; LINDEN MOTOR FREIGHT CO., INC.; LIQUID REMOVAL SER.; LUCAS INDUSTRIES INC; LUMAS CO.; M&F CHEMICAL INC; M&T CHEMICALS INC; MAAS & WALDSTEIN CO; MACARTHUR PETROLEUM; MADISON TOWNSHIP; MAKAR TRUCKING INC; MALLA INC.; MALLINCKRODT CHEM.; MANNON EXCAV. & PAVING CO., INC.; MARBUN DIVISION; MARISOL INC.; MARPAK ASSOC.; MARVIN JONAS INC.; MAYCO OIL & CHEMICAL; MCGILLON EXCAVATING; MCKAYS TRUCKING; MEARL CORP. (THE); MERCER RUBBER; MERCK & CO., INC.; METRO CONTAINER CO.; METRO OIL & CHEM. CORP.; METROL PETRO CHEM. CO.; MICHAELS INDUSTRIAL DISPOSAL; MIDDLESEX CONTAINER; MIDLAND PROC. INC.; MIDWEST EMERY; MILLMASTER; MOBIL OIL CORP.; MONARCH CHEMICAL; MONMOUTH MEDICAL CTR; MONROE CHEMICAL CORP; MONSANTO CO.; MONTVAL LABS; MORTON THIOKOL INC.; MUTPIE TRUCKING; N&N TRUCKING; N. AMER. METAL & CHEM.; NATIONAL CONVERTERS; NATIONAL GYPSUM CO.; NATIONAL STARCH & CHEM. CORP.; NEPERA INC.; NIAGARA SANITATION CO., INC.; NL INDUSTRIES, INC.; NORTON & SON, INC.; NUTEX CORP.; NUTRASWEET CO. (THE); OAKITE PRODUCTS, INC; OCCIDENTAL CHEMICAL CORPORATION; OKONITE CO. (THE); OLIN CORP.; ORGANON, INC.; ORMAND SHOPS, INC. (THE); ORTHO DIAGNOSTICS; PAMARCO, INC.; PAQUET ONEIDA, INC.; PENN CENTRAL CORP.; PERK CHEMICAL CO INC; PERSONAL PROD. CO.; PFIZER, INC.; PHARMAC. LABS INC.; PHELPS DODGE CORP.; PHILIP A. HUNT CHEM.; PIONEER ROOFING CO.; PISCATAWAY DISPOSAL; PITNEY BOWES, INC.; POINT PLEASANT HOSPITAL; POLAROID CORP.; POLYMER MATERIALS, INC.; POPE CHEMICAL CO.; PORTFOLIO ONE, INC.; PQ CORPORATION; PRINCETON NURSERIES; PROCEDYNE CORP.; PROCTER & GAMBLE MANF. CO.; PUBLIC SERV. ELEC. & GAS CO.; PVO INTERNATIONAL, INC.;

QUAKER CHEMICAL CORP; QUALITY CONTAINER; R&R SANITATION; R.W. EAKEN, INC.; RADIAC RESEARCH CORP; RAY GUYS TRAILER; RCA CORP.; REAGENT CHEMICAL & RESEARCH; REICHHOLD CHEMICALS, INC.; REITER DRUM & BARREL; REVERE, COOPER & BRASS, INC.; REYNOLDS METALS CO.; REHEEM MANUFACTURING CO.; RICHARDS TRUCKING; RIVERVIEW HOSPITAL; ROLLINS ENV.SERV. (NJ), INC.; RUPACO PAPER CORP.; RUSSELL REID CORP.; RUSSELL REID CO.; RUSSELL-STANLEY CORP; RUTGERS, THE STATE UNIVERSITY; RYCOLINE PRODUCTS, INC.; S&W TRUCKING; SAM TRUCKING CO.; SB PENICK COMPANY; SSS CONSTRUCTION; SAB NIFE, INC.; SAFETY LIGHT CORP.; SAFETY-KLEEN ENVIROSYSTEMS CO.; SAMSON TANK CLEANING; SANDOZ CHEMICALS CORP.; SANTY; SCHERING CORP.; SCIENTIFIC CHEM PROC; SCOTT PAPER CO.; SEALAND ENVRNMTL; SEALED AIR CORP; SEN-DURE PRODUCTS, INC.; SEQUA CORP.; SETON HALL UNIVERSITY; SHELL CHEMICAL CO.; SHULTON INC CONSUMER; SIEFRIED CHEMICAL; SIKA CORP.; SINCLAIR VALENTINE; SMITH KLINE BEECHAM; SOLVENTS DISTILLERS; SOLVENTS RECOV. SERV. OF NJ, INC.; SOUTHERN CALIF. CHEM. CO., INC.; SPECTRASERV, INC.; ST. BARNABAS ME. CNTR.; ST. JOE PAPER CO.; ST. THOMAS AQUINAS CL.; STANLEY CHEMICAL CO.; STANDARD SPILL; STANDARD TANK CLEAN; STANDARD TOOL & MFG. CO.; STANLEY CHEMICAL CO.; STANLEY WORKS, (THE); STARCH CONTAINER CO.; STARLIGHT TRADING; STAUFFER MANAGEMENT CO.; STEPAN COMPANY; SUN RISE FASHION INC; SYBRON TRANSITION CORP.; TAPPAN TANKER; TAU LABORATORIES; TENNECO RESINS, INC.; TEXACO BUTADIENE CO.; TEXACO, INC.; TEXTRON, INC.; TIME-DC; TIZON CHEMICAL CORP.; TOMS RIVER CHEM. CORP.; TUCK INDUSTRIES, INC.; U.S. METALS REFINING; UNION CAMP RESEARCH; UNION CARBIDE CORP.; UNION TEXTILE; UNIROYAL CHEM. CO., INC.; UNISYS CORP.; UNITED CARTING; UNITED STATES LINES; UNITED STATES METALS REFINING CO.; UNITED TECHNOLOGIES CORP; UNIVERSAL SANIT.; UOP CHEM.; UPJOHN CO. (THE); US SAMICA CORP.; VAMP CHEM; VANGUARD VENTRON CHEMICAL; VILLAGE CESSPOOL; VINELAND CHEM CO INC; W.W. ANDRESS CO.; WALL TRENDS INC.; WALTER KIDDE; WALTZ ENTERPRISES; WESTERN UNION; WESTINGHOUSE ELECTRIC CORP.; WESTON CHEMICAL; WESTRON CHEMICAL CO.; WHITE CHEMICAL CORP.; WHITE ROSE TEA; WHITMOYER LABS; WINCHESTER WESTRON; WITCO CHEMICAL CO.; WOODSTEIN & KLURMAN; Z&W ENTERPRISES INC.; JOHN DOE (1-500); ELMWOOD TANK & PIPING CORP.;

ENVIRONMENTAL RECOVERY; EQUARDORIAN LINE; EXXON CORP.; FETTE FORD, INC.; FISHER SCIENTIFIC CO; FLEXTRAP; FLINTKOTE CORP.; FLOCK INDUSTRIES; FLORENCE IND RECONTO; FLUID PACKAGING CO., INC.; FMC CORP.; FORD MOTOR CO.; FRANK FOGLIA, JR.; FRANK MUGGID BUILDER; FREEHOLD CARTAGE; FRISCH & CO.; FRITSZCHE D&D; FYN PAINT & LACQUER; GAESS ENVIRONMENTAL SER.; GAF CORP.; GALAXY CHEMICAL; GANES CHEMICALS INC; GATX TERMINALS CORP.; GENERAL CABLE CORP.; GENERAL CERAMICS INC; GENERAL ELECTRIC CO.; GENERAL MOTORS CORP.; GENERAL SEWER SERVICE; GENERAL WAREHOUSE; GENWALI; GM ASSEMBLY DIV.; GOODALL RUBBER CO.; GOODYEAR TIRE & RUBBER CO.; GOULD, INC.; GREYHOUND CORP.; GUARD ALL CHEMICAL CO, INC.; GUARDIAN, INC.; GULTON INDUSTRIES, INC.; H&F CHEMICAL CO.; H&S CHEMICAL CO.; HARDMAN INC.; HATCO CHEMICAL DIVISION; ALUMINUM BILLETS; MACARTHUR PETROLEUM & SOLVENT CO., INC.; A.C. BERWICK TRANSPORTERS, INC.; A.C. DUTTON LUMBER CO.; ANDERSON & VREELAND EAST, INC.; ARMOUR & CO.; ARTHUR ANSLEY EAST CORP.; BARON CHEMICAL CORP.; BURROUGHS WELLCOME CO.; CHAMPION PACKAGES; CHEMICAL WASTE DISPOSAL CO. INC.; CLOROX CO. INC.; COGAR CORPORATION; CON. WEIMAR CORP.; D&V WRECKING; DOCK RESINS, INC.; EAGLE EXTRUSION CO.; EPICOR, INC.; FENWAL, INC.; GILBERT REDNER, INC; GIVAUDAN CORP.; GUSMER CORP.; HEINEMANN ELECTRIC COMPANY; HORAN LUMBER & COAL CO.; INDUSTRIAL CIRCUITS CO.; INGERSOLL-RAND COMPANY; INTERNATIONAL ENGRAVING; INTERNATIONAL PAPER COMPANY; ISA OF NEW JERSEY INC.; JOHN ALMASI TRUCKING CO. INC.; JOHN LOSOFSKI TRUCKING CO.; KAISER ALUMINUM & CHEMICAL CORPORATION; KIRBERY TRANSPORTATION, INC.; LITHO KEM LUONGO BROTHERS; METEM CORP.; METEX CORP.; NAPP LEMKE CO.; NEASE CHEMICAL CO.; NEW YORK STATE ELECTRIC & GAS CORP.; PACQUIN; PALISADES AUTO BODY; PEERLESS PETROCHEMICALS, INC.; PENNWALT; PETROLEUM TANK CLEANING & DISPOSAL, INC.; PHOENIX STEEL CORPORATION; PITT-CONSOL CHEMICAL COMPANY; POLY-CHEM INDUSTRIES, INC.; REALCO CHEMICAL CO.; REVLON INC.; S.T. GRISWOLD & CO.; SHERWIN WILLIAMS; SPERRY SLYROSCOPE; SUMCO, INC.; SUN SHIP BUILDING & DRY DOCK CO.; SWOPE OIL AND CHEMICAL CO.; WARNER CHILCOTT; WILSON PRODUCTS; TWP. OF PENNSAUKEN; CITY OF

PERTH AMBOY; TOWN OF PHILLIPSBURG; TWP. OF PISCATAWAY; CITY OF PLAINFIELD; CITY OF RAHWAY; BOROUGH OF RARITAN; TOWNSHIP OF READINGTON; BORO OF ROSELLE; BORO OF ROSELLE PARK; TWP. OF SCOTCH PLAINS; BOROUGH OF SOMERVILLE; BOROUGH OF SOUTH BOUND BROOK; TWP. OF SOUTH BRUNSWICK; TWP. OF SOUTH HACKENSACK; TWP OF VILLAGE OF SOUTH ORANGE; BOROUGH OF SOUTH PLAINFIELD; TWP. OF SPRINGFIELD; CITY OF SUMMIT; BOROUGH OF TETERBORO; BOROUGH OF TREMLEY POINT; CITY OF TRENTON; TWP. OF UNION; BORO OF UNION BEACH; BOROUGH OF VAUXHALL; BOROUGH OF WATCHUNG; TWP. OF WARREN; TWP. OF WESTFIELD; TWP. OF WOODBRIDGE; A. LANNUCCI; A. MARONE; A. PAOLELLA; ALLELLO DISPOSAL; ARTY'S DISPOSAL; BEN'S DISPOSAL; BUBENICK BROTHERS; C&A DISPOSAL; C&D VELLA; COUNTRYSIDE DISPOSAL; D&F DISPOSAL; JOE DICELLIS DISPOSAL SERVICE; ECOLOGY CARTING; FIVE COUNTIES CARTING GROUP; FRANK DECELLIS; G. NUTALL; GONNELLA'S; G&B DISPOSAL; HAMLETTE DISPOSAL; IMPAC HAULAGE CORP.; INFANTINO BROTHERS; J. BUBENICK DISPOSAL; J. CAVALIERE; J. HOLEVA; J. MASCHIO; JAMAICA ASH; JAY BEE DISPOSAL; JOSEPH T. BALL; KNICKERBOCKER CARTING; L. PACIO; M&M DISPOSAL; M. BULDO; M. SYLVESTOR; A. MAURIELLO; METRO DISPOSAL; MID-STATES DISPOSAL; MIDDLESEX CARTING; N. A. DINIZIO; N.J SOLID WASTE; OWNERS CARTING; P&P DISPOSAL; PETER USA & SONS; INDUSTRIAL DISPOSAL SERVICE; PHIL'S DISPOSAL; PLAINFIELD AREA CARTMAN'S ASSOCIATION; R. NUTTALL DISPOSAL; REISEN LUMBER; ROMEO'S DISPOSAL; ROSEDALE CARTING; SCALAMONI DISPOSAL; STAGE/NATIONAL CARTING; SUBURBAN CARTING; T. COLAVITO; W. WINKLEHOLZ; Z&R DISPOSAL; THE STATE OF NEW JERSEY; LUCENT TECHNOLOGIES INC; CENTRAL JERSEY CLNRS; CLEAN SPRAY; JAMES E. MCNULTY; LCP CHEMICAL & PLAST; LESTER SUMMERS; SAND GRAVEL-STONE CO.; MEADOWS FACILITY POST O; SYBRON CHEMICALS; TENNECO CHEM; WESTERN CHEMICAL CO.; GERMAN SHEPARD; Z&W MAZDA; TENNECO POLYMERS INC; CITY OF ASBURY PARK; TOWNSHIP OF BEDMINSTER; TOWNSHIP OF BERKELEY HEIGHTS; BOROUGH OF BOUND BROOK; TOWNSHIP OF BRANCHBURG; TOWNSHIP OF BRIDGEWATER; BOROUGH OF CARLSTADT; BOROUGH OF CARTERET; TWP. OF CLARK; CITY OF CLIFTON; TWP. OF CRANFORD; BOROUGH OF DUNELLEN; TWP. OF EAST BRUNSWICK; BOROUGH OF EAST RUTHERFORD;

6

BOROUGH OF EDGEWATER PARK; CITY OF ELIZABETH; BOROUGH OF FAIRLAWN; BOROUGH OF FANWOOD; BOROUGH OF FLEMINGTON; TWP. OF FRANKLIN; BOROUGH OF GARWOOD; TWP. OF GREEN BROOK; TWP. OF HANOVER; BOROUGH OF HIGHLAND PARK; TWP. OF HILLSBOROUGH; BOROUGH OF HILLSDALE; TWP. OF HILLSIDE; CITY OF HOBOKEN; TWP. OF IRVINGTON; CITY OF JERSEY CITY; TOWN OF KEARNY; BOROUGH OF KENILWORTH; BOROUGH OF LEBANON; CITY OF LINDEN; TWP. OF LIVINGSTON; BOROUGH OF LODI; CITY OF LONG BRANCH; TWP. OF LONG HILL; TWP. OF LYNDHURST; BOROUGH OF MADISON TOWNSHHIP; BOROUGH OF MANVILLE; TWP. OF MARTINSVILLE; BOROUGH OF METUCHEN; BOROUGH OF MIDDLESEX; BOROUGH OF MILLTOWN; TOWN OF MORRISTOWN; BOROUGH OF MOUNTAINSIDE; CITY OF NEWARK; CITY OF NEW BRUNSWICK; NEW JERSEY TURNPIKE AUTHORITY; BOROUGH OF NEW PROVIDENCE; CITY OF NEW YORK; TWP. OF NORTH BERGEN; TWP. OF NORTH BRUNSWICK; BOROUGH OF NORTH PLAINFIELD; BOROUGH OF OAK TREE; BOROUGH OF PARAMUS


DONADIA BROTHERS; MIDDLESEX CONTAINER; FMC CORP.; KEUFFEL & ESSER CO.; WHITE ROSE TEA; HOFFMAN-LA ROCHE INC; OCCIDENTIAL CHEMICAL CORPORATION; J.T. BAKER, INC.; JOHN ALMASI TRUCKING CO. INC.; GREYHOUND CORP.; PORTFOLIO ONE, INC.,

Third-Party Plaintiffs

v.

JOHN DOE , 1-10 individually; JANE DOE, 1-10 Individually; XYZ CORPORATION; EASTERN INDUSTRIAL CORP.; DOCK WATCH QUARRY; MARPAC ASSOC; UNITED CARTING; R&R SANITATION; CHEM TROL POLLUTION; SOLVENT RECOVERY SERVICES OF NEW JERSEY, INC. ('SRS'); HOME INSURANCE COMPANY; BABOCK INDUSTRIES, INC.; FEDERAL STEEL; NATIONAL STANDARD; ENGLEHARD MINERALS & CHEMICALS CORPORATION; PAULSON WIRE ROPE CORPORATION; LUKENS, INC.; CORNING INCORPORATED; DANA CORPORATION; RUSSEL BIRSDAL & WARD CORPORATION; ABC INC;

CITY OF GLEN COVE,

Third-Party Defendants

Transtech Industries, Inc.,
Appellant

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 90-cv-02578)
District Judge: Honorable Harold A. Ackerman

Argued January 7, 2008

Before: SCIRICA, Chief Judge, AMBRO, and FISHER, Circuit Judges

(Opinion filed March 24, 2008)

James M. Andrews, Esquire (Argued)
Jordana Cooper, Esquire
Blank Rome LLP
210 Lake Drive East, Suite 200
Woodland Falls Corporate Park
Cherry Hill, NJ   08002

        Counsel for Appellant

Antoinette R. Stone, Esquire (Argued)
Brown Stone Nimeroff
1818 Market Street, Suite 2300
Philadelphia, PA   19103

Brian J. McCormick, Jr., Esquire
Buchanan Ingersoll PC
1835 Market Street, 14th Floor
Philadelphia, PA   19103-2985

        Counsel for Appellee

---

OPINION

---

AMBRO, Circuit Judge

Appellant Transtech Industries, Inc. seeks a new arbitration hearing after obtaining an unwelcome result in arbitration with appellee SCA Services, Inc.[1]  The United States District Court for the District of New Jersey denied Transtech's motion to vacate the prior arbitration award.  We affirm that decision.

## I. Background

For a nine-month period during 1975 and 1976, Transtech and SCA operated a joint partnership that transported waste to the Kin-Buc landfill, which closed in 1977. The Environmental Protection Agency eventually declared it a Superfund site.  In 1990, Transtech sued under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601–75, several hundred parties who had either arranged for the disposal of wastes at Kin-Buc or transported waste there.  Initially, SCA was a defendant in the suit, but it was later realigned as a plaintiff.  Transtech eventually paid approximately $19 million related to the remediation of the Kin-Buc site.

Until reaching settlement in 1997, SCA and Transtech had disputed their respective shares of responsibility for cleaning up Kin-Buc.  In the settlement contract,

---

[1] SCA Services, Inc. is now known as SC Holdings, Inc., but we will follow the usage of the parties and refer to the appellee as "SCA."

9

SCA assumed Transtech's obligations under the EPA orders pertaining to Kin-Buc, indemnifying and releasing Transtech from all claims. In return, Transtech agreed to pay SCA a portion of its "Recoveries"[2] in a separate action (the "Insurance Action") against various insurers. SCA's portion is equal to 75 percent of Transtech's "Net Recoveries"[3] up to a maximum payment to SCA of $3.5 million.

Four principal issues exist in interpreting the settlement contract: (1) whether Recoveries include the portion of proceeds from the Insurance Action allocated to a separate site (known as Chemsol); (2) whether Recoveries include proceeds from firms dismissed from the Insurance Action that paid Transtech as a result of separate legal actions; (3) whether Transtech can deduct estimated or actual taxes on the proceeds from the Insurance Action when calculating Net Recoveries; and (4) whether Transtech can deduct its attorneys' fees as specified in a 1995 contract with its counsel or the attorneys' fees it actually paid under a subsequent contract.

In November 2000, SCA filed suit to require Transtech to disburse funds to the

---

[2] The settlement contract defines Recoveries in ¶ 5.1 as "[a]ll recoveries of insurance proceeds relating to the claims made, or to the Kin-Buc related claims which could have been made," in the Insurance Action.

[3] The settlement contract defines Net Recoveries in ¶ 5.1 as Recoveries minus Transtech's attorneys' fees and income-tax liability related to Recoveries. The specific definitions of the fees and taxes to be subtracted from Recoveries are among the substantive disputes in this case and will be discussed below in more detail.

Paying Agent[4] because Transtech had begun receiving proceeds from the Insurance

Action. After the District Court ordered it to do so in March 2002, Transtech issued its

first Preparer's Certificate. It specified a payment of $0, to which SCA objected. The

parties selected the Honorable Abraham J. Gafni (retired from the Pennsylvania Court of

Common Pleas) as their arbitrator in June 2002. In October 2002, Judge Gafni issued his

first Decision and Award, which gave a payment to SCA of $3.5 million, the maximum

under the contract. In response, Transtech issued a second Preparer's Certificate in

December 2002. This second document revised Transtech's tax liability from $6,703,957

to $16,682,997, yielding a calculated payment due to SCA of $0.

SCA objected again, resulting in additional briefing as well as oral argument. In

June 2003, Judge Gafni issued an Amended Decision and Award with, among other

revisions, an expanded discussion of Transtech's tax liability. In February 2004, after

further submissions and oral argument, as well as a third Preparer's Certificate that

provided three versions of the relevant calculation, Judge Gafni affirmed his amended

decision and awarded $3.5 million (plus arbitration costs) to SCA.

Transtech moved in District Court to vacate the award under § 10 of the Federal

Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, and to obtain a new arbitration hearing. SCA

cross-moved to confirm the award. The District Court denied Transtech's motion and

---

[4] The settlement contract defines Paying Agent in ¶ 5.1 as a particular named attorney or "another independent third party acceptable to Transtech and SCA . . . who shall make payment to SCA."

11

granted that of SCA. Transtech appeals to our Court, asking us to reverse the District Court's decision and to vacate the arbitration award.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction over the initial CERCLA action under 28 U.S.C. § 1331. The District Court administratively closed that CERCLA action in April 1999, but has yet to enter a final judgment. *See Penn West Assocs.*, *Inc. v. Cohen*, 371 F.3d 118, 126–29 (3d Cir. 2004) (clarifying the meaning of administrative closings). It entered an order requiring Transtech to "comply with all other provisions of paragraphs 5.1 through 5.6 of the Settlement Agreement regarding application of insurance recoveries." Dist. Ct. Order of Nov. 13, 2000. Because the Court incorporated the settlement agreement into an order using specific language, it retained the power to exercise ancillary jurisdiction over Transtech's motion to vacate the arbitration award and SCA's cross-motion to confirm it. *Compare Halderman v. Pennhurst State Sch. & Hosp.*, 901 F.2d 311, 317 (3d Cir. 1990) (holding that a District Court retained jurisdiction where it had "incorporated [a settlement agreement] into an order of the court"), *with Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381 (1994) (holding that a District Court did not have ancillary jurisdiction but stating that "[t]he situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement

12

had been made part of the order of dismissal").[5] We have appellate jurisdiction under 9

U.S.C. § 16(a).

We review the District Court's decision *de novo*. *Dluhos v. Strasberg*, 321 F.3d

365, 369 (3d Cir. 2003). The FAA lists four circumstances in which we must vacate an

arbitration award:

> (1) where the award was procured by corruption, fraud, or
> undue means;
>
> (2) where there was evident partiality or corruption in the
> arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing
> to postpone the hearing, upon sufficient cause shown, or in
> refusing to hear evidence pertinent and material to the
> controversy; or of any other misbehavior by which the rights
> of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so
> imperfectly executed them that a mutual, final, and definite
> award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). We may vacate an award if it demonstrates " 'manifest disregard of the

law,' " *Tanoma Mining Co. v. Local Union No. 1269*, 896 F.2d 745, 749 (3d Cir. 1990)

(citation omitted). We can also vacate an award if it cannot be justified " 'in *any rational*

---

[5] Alternatively, the District Court had diversity jurisdiction over this case. Transtech is a Delaware corporation with its principal place of business in New Jersey. SCA became a Pennsylvania corporation, with its principal place of business in Texas, when it merged with SC Holdings (which gives the company its current name). The amount in controversy, $3.5 million, exceeds $75,000. Thus, the requirements of 28 U.S.C. § 1332 are satisfied as well.

*way*,' " *id.* at 748 (emphasis in original) (citation omitted).  Our Court has recently

summarized the standard of review as follows:

> As a general rule, we must enforce an arbitration award if it
> was based on an "arguable" interpretation and/or application
> of the collective bargaining agreement, and may only vacate it
> if there is no support in the record for its determination or if it
> reflects "manifest disregard of the agreement, totally
> unsupported by principles of contract construction . . ."

*Exxon Shipping Co. v. Exxon Seamen's Union*, 993 F.2d 357, 360 (3d Cir. 1993) (quoting

*News America Publ'ns v. Newark Typographical Union, Local 103*, 918 F.2d 21, 24 (3d

Cir. 1990)).

### III. Transtech's Challenges to the Arbitration Award

Transtech challenges the arbitration award on both procedural and substantive

grounds.  We discuss each category of arguments in turn.[6]

### A. Procedural Infirmities

Transtech alleges procedural flaws in the arbitration process that Judge Gafni

employed and that those flaws violated its due process rights.  In particular, it argues that

---

[6] On appeal, SCA argues that Transtech has waived all its procedurally phrased
arguments, but we reject that line of reasoning.  SCA had ample notice, based on
Transtech's opening brief in the District Court, of the basis for the procedural claims
Transtech has pursued in this appeal; even if the terms "due process" and "*functus officio*"
did not appear, the substance of the claims did.  *De Laval Turbine, Inc. v. West India
Indus., Inc.*, 502 F.2d 259, 271 (3d Cir. 1974) ("The general rule that matters must first be
raised at the district court level is a cornerstone of a rational federal judicial system. As
significant as the rule is, however, we see no reason to append to it a 'magic word'
requirement.").

14

the proceedings lacked certain pertinent evidence, a live hearing, and cross-examination of witnesses. But given the multiple submissions, voluminous supporting materials, and frequent opportunities for oral argument, it does not appear that Transtech's position on contract interpretation issues escaped the arbitrator's notice. Its opening "position paper" comprised over 500 pages. By the end of the arbitration, it had made 17 different submissions. These facts do not suggest a constitutional procedural defect.

Relatedly, Transtech claims that Judge Gafni engaged in "misconduct." It alleges that, in an *ex parte* conversation, Judge Gafni said to its counsel that he "knew" why a contract term had been drafted in a certain way. We fail to see why such a statement indicates corruption under the FAA. An arbitrator in a contract case would naturally seek to understand the intent of the parties.

Transtech further challenges the arbitration award on the ground that Judge Gafni failed to state his reasons in writing. But our Court has stated that "we decline to impose a requirement of arbitral opinions as a matter of law." *Virgin Islands Nursing Ass'n Bargaining Unit v. Schneider*, 668 F.2d 221, 224 (3d Cir. 1981). Especially where, as here, no evidence exists of an arbitrator disregarding the law or the text of a contract, we have no reason to view the absence of a written opinion as a procedural failing.

Transtech next argues that Judge Gafni considered extrinsic evidence, showing manifest disregard for the law and thus violating the FAA. But New Jersey law allows parol evidence, *see, e.g.*, *Nat'l Utility Service, Inc. v. Chesapeake Corp.*, 45 F. Supp. 2d

15

438, 446 (D.N.J. 1999), and our Court has deemed it appropriate for arbitrators to look beyond the text of the contract, *see American Cyanamid Co. v. Fermenta Animal Health Co.*, 54 F.3d 177, 181 (3d Cir. 1995). So it was not a procedural flaw to look to extrinsic evidence.

Finally, Transtech claims that Judge Gafni violated the *funtcus officio* doctrine.[7] Our Court has outlined three exceptions to the *functus officio* doctrine against modifying arbitration opinions: "(1) an arbitrator 'can correct a mistake which is apparent on the face of his award,' (2) 'where the award does not adjudicate an issue which has been submitted, then as to such issue the arbitrator has not exhausted his function and it remains open to him for subsequent determination'; and (3) '[w]here the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify.' " *Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 332 (3d Cir. 1991) (citations omitted). In this case, Transtech's *functus officio* argument centers on the issue of the underlying tax liability, denoted as "(x)" in the contract. Judge Gafni's initial decision had relatively little to say about "(x)," and thus his amended decision clarifies ambiguity about "(x)" in the initial

---

[7] "The doctrine of *functus officio*, Latin for a task performed, was applied strictly at common law to prevent an arbitrator from in any way revising, re-examining, or supplementing his award. The rule provided simply that when 'arbitrators have executed their award and declared their decision they are *functus officio* and have no power or authority to proceed further.' " *Teamsters Local 312 v. Matlack, Inc.*, 118 F.3d 985, 991 (3d Cir. 1997) (emphasis added) (footnote and citations omitted).

award, qualifying for exception (3) above.

In sum, we discern no procedural infirmities in the arbitration proceedings.

## B. Substantive Contract-Interpretation Issues

As mentioned above, Transtech raises four substantive issues of contract interpretation. As the District Court explained in detail, specific contract language rationally supports the interpretation chosen by Judge Gafni and affirmed by the District Court.

First, Transtech argues that "Recoveries" do not include the portion of proceeds from the Insurance Action allocated to the Chemsol site as well as the Kin-Buc site. Paragraph 5.1 of the settlement contract reads: "All recoveries of insurance proceeds relating to claims made, or to the Kin-Buc related claims which could have been made . . . [,] shall be paid to [the Paying Agent]." Judge Gafni and the District Court found that "all" modifies "claims made," while "Kin-Buc related" only modifies "claims which could have been made." We agree that this interpretation, given the particular placement of the phrase "Kin-Buc related," makes the most sense.

Second, Transtech contends that Recoveries should not include proceeds from various insolvent insurance firms who were dismissed from the Insurance Action but who did pay Transtech as a result of separate legal actions. But the contract says "[a]ll recoveries" for claims and related claims, leaving Transtech's argument for excluding these recoveries with no basis.

17

Third, Transtech disputes that it must deduct actual taxes on the proceeds from the Insurance Action when calculating "Net Recoveries." If Transtech's calculated taxes were to be used (as distinguished from its actual taxes owed), it would have been pointless to include the provision in Paragraph 5.2 of the settlement contract that addresses what to do if Transtech's tax liability was not ascertainable at that time. It is reasonable to believe the contract contemplated the deduction of actual taxes.

Fourth, Transtech claims it should not have to deduct the attorneys' fees it actually paid under a subsequent contract. Rather, it seeks to deduct the fees specified in a superseded 1995 contract with its counsel. Paragraph 5.1(a) of the settlement contract allows Transtech to deduct attorneys' fees "paid" or "payable." But there is also language about deducting only those fees that were pursuant to a 1995 contract between Transtech and its lawyers. While this is a closer issue than the other provisions, under our deferential standard of review the arbitrator had some rational support for his decision to require Transtech to deduct its actual attorneys' fees, and thus it stands.

\* \* \* \* \*

In this context, we affirm.

18